**UNDER SEAL**

# UNITED STATES DISTRICT COURT
## for the
## EASTERN DISTRICT OF VIRGINIA

U.S.A. vs. Brett Anthony Amendola         Docket No. 1:21CR00118-001

### Petition on Supervised Release

COMES NOW Annabella K. Steppat, PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of Brett Anthony Amendola, who was placed on supervision by the Honorable Leonie M. Brinkema, United States District Judge, sitting in the Court at Alexandria, Virginia, on the 4th day of October 2022, who fixed the period of supervision at three (3) years, and imposed the general terms and conditions heretofore adopted by the Court and also imposed special conditions and terms as follows:

### SEE PAGE 2

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**

See Attachment(s)

**PRAYING THAT THE COURT WILL ORDER** a warrant to be issued directing that the offender appear before the Court to show cause why supervision should not be revoked.

It is hereby **ORDERED** that the petition, with its attachment and arrest warrant be sealed. It is further **ORDERED** the petition, its attachment and arrest warrant shall remain sealed until the warrant is executed, at which time the petition, its attachment and warrant, should be unsealed and made part of the public record.

**Bond Recommendation: No Bond**

| ORDER OF COURT | I declare under the penalty of perjury that the foregoing is true and correct. |
|---|---|
| Considered and ordered this 21st day of January 2026, and ordered filed and made a part of the records in the above case. | Executed on: January 20, 2026 |
| | *Annabella K. Steppat* — Digitally signed by Annabella Steppat, Date: 2026.01.20 14:29:16 -05'00' |
| /s/ Leonie M. Brinkema<br>United States District Judge | Annabella K. Steppat<br>Senior U.S. Probation Officer<br>703-299-2308<br><br>Place Alexandria, Virginia |

TO CLERK'S OFFICE

Petition on Supervised Release
Page 2

RE: AMENDOLA, Brett Anthony

## Special Conditions

1. The defendant shall make a good faith effort to pay his full restitution obligation, jointly and severally with co-defendant, Roger Amendola during supervised release with minimum monthly payments of $100.00 or 25 percent of net income, whichever is greater. Restitution amount to be determined within 90 days.
2. The defendant shall apply all monies received from income tax refunds, inheritances, judgments, and any anticipated or unexpected financial gains, to the outstanding court-ordered financial obligation or in a lesser amount to be determined by the Court upon the recommendation of the probation officer.
3. The defendant shall not incur new credit card charges, open additional lines of credit, or engage in any financial transaction over $500.00 without prior approval of the probation officer.
4. The defendant shall not accept any funds from any source other than legitimate employment or his parents.
5. The defendant is not permitted to engage in any kind of self-employment.
6. The defendant shall make a good faith effort to obtain full-time employment that is verifiable by his probation officer and must be approved by the probation officer in advance.
7. The defendant shall provide the probation officer access to any requested financial information including information regarding any business assets or jointly held assets.
8. The defendant shall undergo a mental health evaluation and, if recommended, participate in a program approved by the United States Probation Office for mental health treatment with an emphasis on addictive behavior and gambling. The defendant shall take all medications as prescribed and waive all rights of confidentiality concerning his treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider. The defendant to pay all costs as able, as directed by the probation officer.
9. The defendant must remain drug and alcohol free and submit to mandatory drug and alcohol testing. The defendant must satisfactorily participate in, and complete, any inpatient or outpatient drug and alcohol treatment to which defendant is directed by the probation officer. The defendant shall waive all rights of confidentiality regarding alcohol and drug treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider. The defendant to pay all costs as able, as directed by the probation officer.
10. The defendant shall satisfy all child support obligations ordered by any social service agency or court of competent jurisdiction and shall register with the Department of Child Support Enforcement in any state in which the defendant resides.
11. The defendant is to refrain from any and all forms of gambling and is prohibited from entering any establishment where gambling is a source of revenue.

Petition on Supervised Release
Page 3

RE: AMENDOLA, Brett Anthony

OFFENSE: Wire Fraud, in violation of Title 18 U.S.C. § 1343

SENTENCE: Eighteen (18) months of incarceration, with credit for time served, to be followed by three (3) years of supervised release with special conditions listed on Page 2.

ADJUSTMENT TO SUPERVISION: The defendant's adjustment to supervision has been unsatisfactory. Mr. Amendola began his term of supervision on October 20, 2023. The special assessment fee was satisfied in full on November 2, 2023. Mr. Amendola currently resides with his parents in Gainesville, Virginia, and is unemployed. The defendant is enrolled in individual therapy with the Center for Clinical and Forensic Services (CCFS) in Fairfax, Virginia.

The undersigned notes that the defendant began supervision with a positive attitude and, what appeared to be, a desire for change. Upon release in October 2023, the defendant made efforts to find full-time employment and his monthly financial reports, as well as his restitution payments, were submitted in a timely manner. In November 2023, the defendant began working with Jarret Services. LLC. Shortly after, the defendant requested to work with Upper Edge Management, a sport consulting company. Both the defendant, and the Upper Edge Management CEO, Andrew Ross, affirmed that the defendant would not have access to any financial information and would solely be working on data market research and marketing strategies for the company. The defendant would be compensated monetarily, as well as receiving full housing and transportation. However, due to the defendant failing to adhere to his contract with Upper Edge Management, the defendant was fired from the position, thus losing his housing and transportation resulting in his return to his parents' residence. Shortly after, the defendant's compliance on supervision began to decline significantly as evidenced by the alleged violations below.

As of this date, Mr. Amendola has paid $3,000.00 towards restitution. The remaining restitution balance is $91,681.53. Mr. Amendola has struggled to make consistent payments, which he attributes to his unemployment status. A computerized record check was performed on January 16, 2026, which did not reveal any new arrests. However, the undersigned notes that the defendant was charged with *Holding Phone – Operate Vehicle* (Infraction) on June 12, 2025, in Prince William General District Court, which was prepaid in full on August 22, 2025.

The U.S. Probation Office received information alleging ongoing misconduct by the defendant, misconduct similar to that of his instant offense and a prior Petition on Supervised Release filed pursuant case number 1:12CR00116-1. As such, an office visit was conducted whereby the defendant corroborated most of the reported misconduct.

VIOLATIONS: The following violations are submitted for the Court's consideration:

**STANDARD CONDITION #3:** YOU MUST NOT KNOWINGLY LEAVE THE FEDERAL JUDICIAL DISTRICT WHERE YOU ARE AUTHORIZED TO RESIDE WITHOUT FIRST GETTING PERMISSION FROM THE COURT OR THE PROBATION OFFICER.

Petition on Supervised Release
Page 4

RE: AMENDOLA, Brett Anthony

| | |
|---|---|
| **STANDARD CONDITION #8:** | **YOU MUST NOT COMMUNICATE OR INTERACT WITH SOMEONE YOU KNOW IS ENGAGED IN CRIMINAL ACTIVITY. IF YOU KNOW SOMEONE HAS BEEN CONVICTED OF A FELONY, YOU MUST NOT KNOWINGLY COMMUNICATE OR INTERACT WITH THAT PERSON WITHOUT FIRST GETTING THE PERMISSION OF THE PROBATION OFFICER.** |

During office appointments on December 16, 2025, and January 13, 2026, Mr. Amendola admitted to traveling to Michigan, New Jersey, and Maryland without permission while on supervised release.

The defendant admitted that he travelled to Michigan to meet with Milija "Mike" Perkovic, a convicted felon who the defendant knows from his time in the Bureau of Prisons (BOP). Furthermore, Mr. Amendola reported that Mr. Perkovic created a brokerage company called Tastytrade and provided the defendant with access to his financials so that Mr. Amendola could invest on Mr. Perkovic's behalf. In return, the defendant was promised twenty (20) percent of Mr. Perkovic's profits.

The defendant admitted to traveling to New Jersey to meet with Paul Apostopolous, a convicted felon who the defendant knows from his time in the BOP. On his way to New Jersey, the defendant stopped in Baltimore, Maryland, to gamble at Horseshoe Baltimore. However, the defendant advised he was removed from the establishment after approximately one (1) hour.

Additionally, on December 16, 2025, and January 13, 2026, the defendant admitted that he has been in contact with at least five (5) convicted felons since his release in November 2023. The defendant advised that he met these individuals during his time spent incarcerated in the BOP. Furthermore, he admitted to engaging in business dealings, including trading and investing, with at least three (3) of these individuals. Probation notes that one of the defendants, Johnny C. Brown, is currently on supervised release in the Middle District of North Carolina.

At no time did the defendant seek permission to have contact with convicted felons and the undersigned did not give the defendant permission to travel to the above-noted locations.

| | |
|---|---|
| **STANDARD CONDITION #4:** | **YOU MUST ANSWER TRUTHFULLY THE QUESTIONS ASKED BY YOUR PROBATION OFFICER.** |
| **SPECIAL CONDITION #6:** | **THE DEFENDANT SHALL MAKE A GOOD FAITH EFFORT TO OBTAIN FULL-TIME EMPLOYMENT THAT IS VERIFIABLE BY HIS PROBATION OFFICER AND MUST BE APPROVED BY HIS PROBATION OFFICER IN ADVANCE.** |

Petition on Supervised Release
Page 5

RE: AMENDOLA, Brett Anthony

On February 6, 2024, the defendant requested to work for Upper Edge Management. The defendant noted that he would be working directly under Andrew Ross, the CEO of the company, and that he was aware of the defendant's limitations in regard to having access to financial information. On April 1, 2024, the undersigned received a letter from Upper Edge Management advising that they were aware of the defendant's status on supervised release and that the defendant would be helping with client development and recruiting.

On May 6, 2024, the undersigned spoke to Andrew Ross, via phone, who again confirmed that the defendant would be conducting market research and work on market strategies for the company. Mr. Ross noted that he was aware of the defendant's convictions and advised Mr. Amendola would not have access to financial information. Based on this information, the undersigned approved the defendant to work for Upper Edge Management. However, in August 2024, the defendant was fired from his position due to failure to adhere to his contract requirements.

During an office visit on January 13, 2026, the defendant admitted that he had access to the company's financial information, including investments accounts, when he was working there. The defendant claims that Upper Edge Management is now requesting he pay back funds received from when the defendant was employed. The defendant agreed to make monetary payments out of fear that probation would be notified that he was dishonest about his job responsibilities.

| | |
|---|---|
| **STANDARD CONDITION #4:** | YOU MUST ANSWER TRUTHFULLY THE QUESTIONS ASKED BY YOUR PROBATION OFFICER. |
| **SPECIAL CONDITION #3:** | THE DEFENDANT SHALL NOT INCUR ANY NEW CREDIT CHARGES OR OPEN ADDITIONAL LINES OF CREDIT, OR ENGAGE IN ANY FINANCIAL TRANSACTION OVER $500.00 WITHOUT PRIOR APPROVAL OF THE PROBATION OFFICER. |
| **SPECIAL CONDITION #4:** | THE DEFENDANT SHALL NOT ACCEPT ANY FUNDS FROM ANY SOURCE OTHER THAN LEGITIMATE EMPLOYMENT OR HIS PARENTS. |
| **SPECIAL CONDITION #5:** | THE DEFENDANT IS NOT PERMITTED TO ENGAGE IN ANY KIND OF SELF-EMPLOYMENT. |
| **SPECIAL CONDITION #7:** | THE DEFENDANT SHALL PROVIDE THE PROBATION OFFICER ACCESS TO ANY REQUESTED FINANCIAL INFORMATION INCLUDING INFORMATION REGARDING BUSINESS ASSETS OR JOINTLY HELD ASSETS. |

During a routine credit check on May 2, 2025, the undersigned discovered that, on July 11, 2024, the defendant opened a loan in the amount of $2,414 with Regional Finance. When confronted, the defendant claimed that he attempted to consolidate previous debt; however, to this date, no confirmation of this has been provided to the undersigned despite multiple requests to provide same.

...

Petition on Supervised Release
Page 6

RE: AMENDOLA, Brett Anthony

Furthermore, on December 16, 2025, and January 13, 2026, Mr. Amendola confirmed that his parents provide him with money as authorized by the Court. However, he further disclosed using his parents' bank cards for various transactions which were not reported to probation, including paying his daily bills. Furthermore, the defendant admitted that he opened several business bank accounts, Alexson Holdings and ARCA Holdings, under his father's name, Roger Amendola, to receive compensation from his investment dealings and to circumvent employment and financial disclosure to probation. In addition, Mr. Amendola reported he had regular access to an Apple Federal Credit Union (FCU) account, under his name, and TD Bank account, under his father's name, which he did not report to probation. The defendant disclosed he engaged in numerous transactions over $500.00 using either the business bank accounts, the unreported bank cards, and/or his parents' funds. Mr. Amendola noted that he received between $1,000 to $6,000 in profits from his investment dealings with Mr. Perkovic, which were paid into his business accounts.

Lastly, on January 13, 2026, Mr. Amendola admitted that he has impersonated his father on a frequent basis when dealing with banking institutions. The defendant noted that he is Power of Attorney for his father and that it is easier to pretend he is his father rather than prove he is Power of Attorney for his father.

**SPECIAL CONDITION #10:** **THE DEFENDANT SHALL SATISFY ALL CHILD SUPPORT OBLIGATIONS ORDERED BY ANY SOCIAL SERVICE AGENCY OR COURT OF COMPETENT JURISDICTION.**

On December 16, 2025, Mr. Amendola admitted that he failed to pay child support from December 2024 until December 2025. To the defendant's credit, he made a $500 payment in January 2026. According to the Virginia Department of Social Services, the defendant currently owes $59,122.50 in arrears and his next payment is due on February 1, 2026.

**SPECIAL CONDITION #11:** **THE DEFENDANT IS TO REFRAIN FROM ANY AND ALL FORMS OF GAMBLING AND IS PROHIBITED FROM ENTERING ANY ESTABLISHMENT WHERE GAMBLING IS A SOURCE OF REVENUE.**

On December 16, 2025, and January 13, 2026, the defendant admitted to online gambling via FanDuel, Caesars Sportsbook, and BetMGM under his father's name for approximately a year. The defendant noted that he last gambled prior to his meeting with probation on December 16, 2025. The defendant estimates he gambled approximately $20,000 to $100,000 but was unsure of his exact profit or loss. It is noted that probation received evidence from the U.S. government advising the defendant spent approximately $209,708.61 gambling.

In addition, as noted above, on December 16, 2025, the defendant admitted that he gambled at Horseshoe Baltimore in Baltimore, Maryland, on his way to New Jersey. The defendant advised he was at the facility for approximately one (1) hour until he was removed from the casino.

AKS/cmf/dg